UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF GLENARA BATES, *et al.*,   Case No. 1:15-cv-798

    Plaintiffs,   Judge Timothy S. Black

vs.

HAMILTON COUNTY DEPARTMENT
OF JOB AND FAMILY SERVICES, *et al*.,

    Defendants.

## ORDER GRANTING THE COUNTY DEFENDANTS' MOTION
## FOR JUDGMENT ON THE PLEADINGS (Doc. 36)

This civil action is before the Court on the County Defendants'[1] motion for judgment on the pleadings (Doc. 36) and the parties' responsive memoranda (Docs. 44, 46, 52).[2]

---

[1] The County Defendants include Hamilton County Department of Job and Family Services ("HCJFS"), Hamilton County, Ohio, the individual Commissioners of the Board of County Commissioners in their official capacities, and Moira Weir, director of HCJFS in her individual and official capacities.  The Court notes that under Ohio law, HCJFS and Hamilton County are not *sui juris* and therefore cannot be sued.  *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, No. 1:05cv117, 2008 U.S. Dist. LEXIS 125138, at *2 (S.D. Ohio Mar. 26, 2008); *Black v. Hamilton Cty. Pub. Def. Comm'n*, No. 1:12cv503, 2013 U.S. Dist. LEXIS 25386, at *11 (S.D. Ohio Feb, 25, 2013).

[2] The County Defendants request oral argument.  (Doc. 36 at 1).  The Court finds that the pleadings are clear on their face, and that oral argument is not necessary.  *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, at *7 (S.D. Ohio July 27, 2006) (J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion to grant a request for oral argument.").

## I. BACKGROUND FACTS

When decedent Glenara Bates was born in January 2013, she was placed in a foster home with her siblings. (Doc. 1 at ¶ 18). In September 2013, Hamilton County Juvenile Court ordered the termination of HCJFS's temporary custody of Glenara, gave Protective Supervision over Glenara to HCJFS, and awarded legal custody of Glenara to her mother, Defendant Andrea Bradley.[3] (Doc. 36, Ex. A).[4] In December 2013, Protective Supervision was terminated by the Hamilton County Juvenile Court. (*Id.*, Ex. B).

At the time of her death, Glenara Bates was in the custody of her parents. (Doc. 1, ¶¶ 49, 50). On September 7, 2016, Glen Bates was found guilty of aggravated murder. (Doc. 52 at PageID 435).

## II. STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of

---

[3] Plaintiffs allege that HCJFS made the decision to return Glenara to her mother, Defendant Andrea Bradley. (Doc. 1 at ¶ 2). However, the Juvenile Court, not HCJFS, made this determination. Ohio Rev. Code § 2151.23(A)(2).

[4] The Hamilton County Juvenile Court records are public record and may be considered by this Court in determining the merits of this motion for judgment on the pleadings without converting this motion into a motion for summary judgment. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502-03 (6th Cir. 2001) ("[i]n determining whether to grant a Rule 12(b)(6) motion,….matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered).

the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (*citing JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. Rule Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. Federal Claims

A municipal liability claim pursuant to Section 1983 must be examined by applying a two pronged inquiry: (1) has the plaintiff asserted the deprivation of a constitutional right; and (2) is the municipality responsible for that violation. *See Doe v. Claiborne Cty.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

Plaintiffs' complaint alleges that Glenara's civil rights, as provided by the First, Fourth, Fifth, and Fourteenth Amendments, were violated. (Doc. at ¶ 25). However, Plaintiffs fail to directly discuss violations of particular rights provided by these constitutional amendments.[5] Since the complaint fails to state violations of either the First or the Fourth Amendments, any civil rights violation claimed by Plaintiffs arguably

---

[5] The protections provided by the First Amendment are well-known and generally include free practice of religion, freedom of speech, freedom of press, freedom of assembly, and the right to petition the government. Plaintiffs' complaint alleges no facts indicative of a First Amendment violation. The Fourth Amendment provides protections against unreasonable searches and seizures and requires probable cause for the issuance of warrants. Plaintiffs' complaint alleges no facts indicative of a Fourth Amendment violation.

4

arises from the Fifth or Fourteenth Amendments. Among the protections offered by these amendments, the Due Process Clauses in each are the only protections conceivably applicable to Plaintiffs' case.

> As interpreted by the courts, the Due Process Clause protects substantive due process, which is the right to be free from government infringement against certain liberties such as personal security regardless of the process used, as well as procedural due process, which is the right to a fair procedure when the government deprives a person of protected liberties.

*Langdon v. Skelding*, 524 F. App'x 172, 175 (6th Cir. 2013). The complaint simply does not support a constitutional violation of either substantive or procedural due process.

### 1. *Substantive Due Process*

Plaintiffs allege a "duty to protect" that is not found in Ohio law. It is undisputed that at the time of her death, Glenara Bates was in the sole custody of her parents, Andrea Bradley and Glen Bates. Glen Bates was convicted of murdering Glenara. (Doc. 52 at PageID 438).

"The Due Process Clause's purpose is 'to protect the people from the State, not to ensure that the State protects them from each other.'" *Langdon*, 524 F. App'x at 175. "As a general rule, the State has no obligation to protect the life, liberty, or property of its citizens against invasion by private actors." *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 853 (6th Cir. 2016). Two exceptions to this rule exist: (1) where the State enters into a "special relationship" with an individual by taking that person into its

custody; and (2) where the State creates or increases the risk of harm to an individual. *Id.* Plaintiffs have not pled either exception.

### a. Special Relationship

Plaintiffs have not alleged that a special relationship existed between Glenara and the County Defendants.

For example, in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), a child was injured by his father after the local child protective services received complaints of abuse but decided not to seek removal of the child. *Id.* at 191-93. Following the reports of abuse, the child was beaten so severely by his father that the child suffered permanent brain damage. The Supreme Court held that because the child suffered harm while in the custody of his father, and not the State, the State had no constitutional duty to protect the child. *Id.* at 201. The due process clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security…its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* at 195-96. The Court noted that the purpose of the due process clause "was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." *Id.* The Supreme Court did not find it relevant that the state had once taken temporary custody of the child, but had returned the child to the custody of his parents. Temporary state custody "[did] not alter the analysis,

6

for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* at 191-93.

Accordingly, there is no evidence that a special relationship existed between the County Defendants and the decedent.

### b. Affirmative Action

To prevail on a state-created danger theory, Plaintiff must establish: (1) an affirmative act that creates or increases the risk to the plaintiff; (2) a special danger to the plaintiff as distinguished from the public at large; and (3) the requisite degree of state culpability. *Stiles*, 819 F.3d at 854. Plaintiffs' claims that the County Defendants failed to adequately investigate and remove Glenara from her mother's custody do not meet the state-created danger test. Plaintiffs' allegations, if true, are omissions and not affirmative acts and "a failure to act does not satisfy the affirmative-act prong" of the state-created-danger test. *Id.* at 854-55.

In *Langdon v. Skelding*, 524 F. App'x 172, 172 (6th Cir. 2013), child protective services received multiple child abuse complaints, but closed each investigation without removing the child. Subsequently, the child died in a house fire after being chained to a bed by her father and stepmother. The Sixth Circuit found that the state did not create the danger because "[t]he facts alleged merely show that the defendants did not do enough to investigate the complaints of abuse, and this is a mere failure to act." *Id.*

7

Here, Plaintiffs allege that the County Defendants failed to act by failing to inspect Glenara's parents' home, failing to properly investigate abuse, failing to follow-up with Children's Hospital personnel, and failing to remove Glenara from her parents' home. However, none of these failures (assuming they occurred) were affirmative acts constituting a state-created danger.

Plaintiffs also allege that the County Defendants are liable for "placing [Glenara] back with her parents on or about September 20, 2013." However, the reunification of Glenara with her parents by order of the Hamilton County Juvenile Court is not an affirmative act on the part of the County Defendants. First, placement and custody decisions lie exclusively with the Hamilton County Juvenile Court as a matter of Ohio law. Ohio Revised Code § 2151.23(A)(2). Second, it was the Juvenile Court that terminated HCJFS's temporary custody of Glenara and returned her to the custody of her mother, Andrea Bradley. (Doc. 36, Exs. A-B). *See also Stephens v. Hamilton Cty. Jobs & Family Servs.*, 46 F.Supp.3d 754, 763 (S.D. Ohio 2015) (juvenile court has the ultimate decision making authority with respect to placement and custody of a child). Third, even assuming sufficient factual allegations to support the claim, the County Defendants have absolute immunity for any actions taken as legal advocates in the Hamilton County Juvenile Court, including the initiation of court actions or testifying under oath. *Brenner v. Cuyahoga Cty. Dep't of Children & Family Servs.*, No. 91712, 2009 Ohio App. LEXIS 1063, at *3 (Ohio App. Mar. 19, 2009) (social worker's role in advocating reunification, including recommendation to juvenile court and investigation

8

leading up to her recommendation are related to judicial proceedings within the scope of absolute immunity).

Plaintiffs allegation that the County Defendants "total control over the parent-child relationship" and that may have prevented Glenara from bonding with her mother, and thereby substantially increased the danger she faced when returned to her mother, is akin to the argument rejected in *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003). In *Bukowski*, the appellate court rejected this argument, finding that "[t]he plaintiffs' argument that the officials encouraged [the sexual abuser] by their act of returning [the young woman] is really the same as the argument that the officials encouraged [the sexual abuser] by their refusal to get involved." *Id.* When an official intervenes to protect a person, then later returns the person to "a situation with a preexisting danger," the intervention does not satisfy the affirmative act requirement for state-created danger. *Id.* Specifically, Plaintiffs argue that the affirmative act of taking temporary custody coupled with a failure to ensure bonding constituted a state-created danger. (Doc. 43 at 7). However, just as in *Langdon*, the gravamen of Plaintiffs' argument that liability exists fails, because it is premised on a failure to act and not an affirmative act. 524 F. App'x at 175. The "mere possibility" that HCJFS did not do enough to ensure mother-child bonding during the term of its temporary custody is insufficient to establish an affirmative act that creates liability for the County Defendants on a state-created danger theory.

9

Plaintiffs also cannot meet the second prong of *DeShaney*, which requires that a special danger has been created for the plaintiff as distinguished from the public at large. Specifically, the *DeShaney* court concluded that the fact that the state once had temporary custody of a child but returned the child to his natural parents did not increase the child's risk of harm because the state "placed him in no worse position than that in which he would have been had it not acted at all." 489 U.S. at 201. Since the state had no duty to protect Glenara from her parents' violence, the allegation that it failed to do so does not constitute a violation of the Due Process Clause.

### 2. *Procedural Due Process*

A state may create a "due process protected liberty interest by creating limitations on official discretion by establishing substantive predicates to govern official decision-making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013). "The state statute 'must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present.'" *Id.*

In *Langdon*, the Court examined the issue of a caseworker's discretion under Michigan law in determining whether a right to procedural due process existed. The Court found that although the statute required a child services caseworker to conduct an investigation, in certain circumstances, the statute did not mandate the investigation's outcome. Since the investigating caseworker had discretion concerning whether a child was abused or neglected, the statute did not create a right to procedural due process in the

10

outcome of the investigation. 524 F. App'x at 178 (whether the court itself could find sufficient evidence to prove abuse and/or neglect is immaterial; "what matters is that [the caseworker] had the discretion to find none").

Here, Plaintiffs assert that the County Defendants violated Glenara's civil rights by placing her back in her mother's home without proper investigation and/or by failing to remove her from her mother's home due to improper investigation of alleged signs of abuse. (Doc. 1 at ¶ 27). Plaintiffs have not identified any mandatory duty under Ohio law that County Defendants failed to perform which would support a claim of procedural due process. Glenara was ordered back into the custody of her parents by the Hamilton County Juvenile Court. A period of protective supervision was ordered by the Court, which had lapsed at the time of the child's death. Plaintiffs have not identified any provision of Ohio law that mandated that Glenara not be placed back in the custody of her parents or mandated that she be removed based on an allegation of abuse or neglect. Absent such mandates under Ohio law there is no procedural due process violation.

Section 5153.16 of the Ohio Revised Code enumerates duties of public children services agencies in Ohio. Although this section outlines certain duties on the part of children's services entities, none of these statutes mandate a particular outcome, but rather each allows for the exercise of discretion. Likewise, the Ohio Administrative Code does not include any rule that mandates a particular result from an investigation. Ohio Administrative Code §§ 5101:2-36-03, 5101:2-37-01, 5105:2-37-03, 5101:2-39-01. *See also Jackson v. Nixon*, 469 F. App'x 411, 413-14 (6th Cir. 2011) (where state created

11

rights do not guarantee particular substantive outcome these rights are not protected by the Fourteenth Amendment).

It is undisputed that Glenara was placed back into the legal custody of her mother, Andrea Bradley, and was in the custody of her parents, Andrea Bradley and Glen Bates, at the time she was murdered by one or both of them. Plaintiffs' allegation of liability stems from the reunification of Glenara with her parents and a failure to remove her subsequently. However, Plaintiffs do not identify any Ohio statute that mandated either that Glenara not be reunited with her both parents or that she be removed by the County Defendants upon an allegation of abuse. Therefore, there is no procedural due process violation.

### B.  Moira Weir

Qualified immunity shields government officials from civil liability in the performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining reasonableness of the actions of the state actor, the court must undertake a two-step inquiry: (1) do the facts establish that the defendant violated a constitutional right; and (2) if so, was that right clearly established at the time it was allegedly violated. *Saucier v. Katz*, 533 U.S. 194, (2001).

Ms. Weir, in her individual capacity, cannot have violated a clearly established constitutional right by "failing to protect" Glenara Bates, who was in the custody of her parents, when she was killed.

### C. State Claims

Plaintiffs assert three wrongful death claims and a survivorship claim under state law. Wrongful death claims in Ohio are governed by Ohio Revised Code Section 2125.01. *Rubeck v. Huffman*, 374 N.E.2d 411 (Ohio 1978) (the right to sue for wrongful death is a statutorily created right that was not recognized at common law and thus is limited by statute). Survivorship actions are governed by Ohio Revised Code Section 2305.21. To prove their survival and wrongful death actions, Plaintiffs must show that the County Defendants owed Glenara a duty, that the County Defendants breached that duty, and that the breach of duty proximately caused Glenara's injuries and death. *Feldman v. Howard*, 226 N.E.2d 564 (Ohio 1967).

Since Plaintiffs' federal claims fail as a matter of law, this Court declines to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3) (the court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial, … the state claims should be dismissed as well.").

## IV. CONCLUSION

Accordingly, for these reasons, the County Defendants' motion for judgment on the pleadings (Doc. 36) is **GRANTED**. Accordingly, the federal claims asserted against the County Defendants are **DISMISSED** as a matter of law and the state law claims are **DISMISSED WITHOUT PREJUDICE**. Defendants Hamilton County Department of Job and Family Services, Hamilton County, Ohio, Greg Hartmann, Chris Monzel, Todd Portune, and Moira Weir are **TERMINATED** as defendants to this lawsuit. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

Date: 1/11/17

*Timothy S. Black*
Timothy S. Black
United States District Judge